## Case No. 17,433.

WESTERN DIVISION OF WESTERN N. C. R. CO. v. DREW et al.

[3 Woods, 674.] [1]

Circuit Court, N. D. Florida. May, 1877.

RAILROAD MORTGAGE — SALE BY TRUSTEE — PRELIMINARY INJUNCTION—ISSUE OF BONDS—ACQUIESCENCE OF STOCKHOLDERS.

1. The granting of a preliminary injunction is within the discretion of the court, and in the exercise of this discretion it will look at the consequences which will ensue. on the one hand, from granting it, and on the other hand, from withholding it.

2. Upon a bill filed to restrain a sale of mortgaged property by a trustee, on the ground that the bonds to pay which the sale was to be made were void. *Held*, that the possibility that a favorable chance to sell the property would be lost by delay, was not a legal ground for refusing to restrain the sale, which would entirely destroy the rights of complainant, if he had any.

3. The real owner of the majority of stock in a railroad company who permits its affairs to be managed by others holding the legal title to the stock, and the officers elected by them, cannot claim as against innocent parties, that the company is exempted from any obligation which it has assumed through such officers and managers, or to which it may, through them, have become equitably liable.

4. The trustee, with power of sale, for certain parties holding bonds secured by a lien upon a railroad, has the right to decide, in the first instance. upon the sufficiency of the claim of the bondholders to have the property sold to pay the bonds which they profess to hold: at the same time, those representing the railroad company have the concurrent right of appealing to the courts for an adjudication upon the claims and rights of the alleged bondholders.

5. Where the evidence upon a motion for injunction raised grave doubts on the question, whether the bondholders in whose behalf the trustee was about to make a sale, were bona fide holders, an injunction to restrain the sale was allowed.

[Cited in Chaffraix v. Board of Liquidation 11 Fed. 646.]

In equity. Heard upon motion for preliminary injunction.

Joseph B. Stewart and E. M. Thompson, for the motion.

Henry R. Jackson and George P. Rainey, contra.

BRADLEY, Circuit Justice. The object of this suit, as set forth in the prayer of the bill. is to enjoin the governor of Florida from seizing the Florida Central Railroad, extending from Jacksonville to Lake City, and to have declared null and void certain bonds purporting to be bonds of the Florida Central Railroad Company. one thousand in number. for one thousand dollars each, dated January 1, 1870. which bonds are in possession of the treasurer of the state of Florida. and for nonpayment of interest on which the governor threatens to seize and sell the road. The bill further prays that the said treasurer may be decreed to surrender said bonds to the com-

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

pany, and that certain persons, made defendants, to wit, John Collinson and others, may be enjoined from harassing the company on account of said bonds. The governor having advertised the road for sale, motion is now made, on petition filed for that purpose, for a preliminary injunction against him to prevent his seizing and selling the road; against the treasurer from parting with the bonds pending suit, and against the parties claiming relief on account of the bonds from further interfering with the said railroad, or causing it to be seized, until final decree in the cause.

The motion for injunction is opposed by the defendants, the governor and treasurer of the state, on three grounds: First. That the complainant has no title and no right to interfere in the matter. Secondly. That if it ever had title, it has lost and waived it by laches, and by acts which estop it from claiming any relief. Thirdly. That the bonds are not void, but are in equity good against the company for the benefit of persons holding certain state bonds, which they purchased in good faith, and which were issued to the company in exchange for the said company bonds, but which, being void, the said purchasers have a right to resort to the bonds in question, and the state has a right to compel their payment for this purpose.

The bill has been demurred to, and the demurrer has been overruled after argument. The question of the complainant's title, and the question of laches, so far as appeared on the face of the bill, were fully discussed on the demurrer, and unless the aspect of the case on these points has been changed, the decision made upon that argument must be regarded as the law of the case. The defendants not having filed answers, the case still remains as before on the pleadings. But affidavits have been read on the present motion, both on the part of the complainant and the defendants, and various records and documents, either verified or conceded to be authentic, have been referred to. So far as these may have altered the complainant's case, it is necessary to examine them. Before doing this, however, it is proper to observe that it would be very unfair to the parties to decide the whole merits of the case on this motion upon mere affidavits. The granting of a preliminary injunction is in the discretion of the court, and in exercising this discretion it will look at the consequences which would ensue on the one hand by granting it, and on the other by withholding it. In the present case, it is apparent that if the complainant has the rights claimed by the bill, and if the bonds are really void, or there are plausible grounds for supposing them to be so, a very serious, if not irreparable, injury would ensue by seizing and selling the road in the summary manner proposed. On the other hand, if it should turn out that the complainant's title is defective, or that the company bonds are amenable to the claims of the bondholders referred to, a temporary suspension of the sale cannot

materially injure them. The property is there, and will remain there, and its earnings can, in the mean time, be employed in keeping it in repair. The possibility that a favorable opportunity of disposing of it, known to exist, may be missed by the delay, can hardly be deemed a legal ground for precipitating a sale which would most certainly destroy the rights of the complainant, if he has any. These are considerations necessary to be borne in mind in disposing of the present motion.

I am fully aware of the great importance to the people and business of the state, that the vexatious litigation respecting this and the connecting railroad should be terminated; and that the road should come into the possession of responsible parties clothed with a secure title, in order that they might feel encouraged to improve and extend it, and make it what it should be, a first-class line of communication. But however desirable it may be that this result should be hastened, it is very questionable whether it would be hastened by disregarding those obvious principles of justice of which all parties litigating in good faith have a right to enjoy the benefit. Looking, then, at the affidavits laid before me, I do not see that the title of the complainant has been materially affected by anything new which has been evolved. In truth, the allegations of the bill have rather been corroborated than weakened. It seems to be indisputable that Swepson and Littlefield, between them, did procure the stock of the Florida Central Railroad Company with the proceeds of North Carolina bonds, which they had no right to dispose of in that way; and that the complainant, as soon as the fraud was discovered, endeavored to hold them and their confederates accountable; and after pursuing the wrongfully converted funds through much litigation, and after many ineffectual attempts at compromise, the complainant finally procured an acknowledgment of its equitable claim to this stock, which Littlefield, who is a party to this suit, and holds the principal part of it, does not deny. The affidavits of Rollins, the president of the complainant, and of Mr. Stewart, the solicitor, are to the effect that in December last, previous to the commencement of this suit, Littlefield recognized the rights of the complainant to the stock of the Florida Central Railroad Company, and made a full and complete transfer thereof to the use of the complainant.

The suggestion made by defendants' counsel, that the North Carolina bonds, the proceeds of which were embezzled, were void, and were repudiated by the state, and, therefore, that the complainant had no title to call Swepson and Littlefield, and their confederates, to account, and that the parties who purchased the bonds are the real beneficiaries entitled to pursue these funds, may possibly be well founded, and may govern the rights of the parties on the final hearing of the cause on the merits. But I do not feel justified, at this stage of the cause, in assuming that the

facts on which this suggestion is grounded are sufficiently made out. All the negotiations, agreements of compromise and litigations which have taken place between the complainant and the parties having possession of the bonds, have either proceeded upon a concession of the plaintiff's right, or have resulted in adjudications confirmatory of it. So far as appears by the disclosures in this cause, the complainant is the only party equitably interested in the principal part of the stock of the Florida Central Railroad Company.

The next question is, whether, conceding this to be so, the complainant has not, by permitting Littlefield, Swepson and their associates to appear as the owners of the stock, made them its agents and trustees so as to be bound by their acts as apparent stockholders and as directors of the company, at least so far as regards innocent parties dealing with them as such? On this question, without going into the evidence in detail, I shall do little more than state the conclusion to which I have arrived— a conclusion based, it must be remembered, only on affidavits and the documents which have been presented on this hearing. It seems to me that the question proposed must be answered in the affirmative, to wit, that the complainant has permitted Littlefield and his associates so to deal with the property as to make their acts performed in their capacity of stockholders and officers of the Florida Central Railroad Company binding, except as to those persons who had notice that they were acting in any transaction in fraud of the rights of the complainant. It is sufficient, in this connection, to refer to the agreement made on the 16th day of April, 1870, between the Florida Central Railroad Company, George W. Swepson, president; the Jacksonville, Pensacola & Mobile Railroad Company, Milton S. Littlefield, president, and Littlefield, majority owner of the stock of the Tallahassee Railroad Company, of the first part, and the Western Division of the Western North Carolina Railroad Company, represented by N. W. Woodfin and others, commissioners appointed by act of the legislature of North Carolina, approved by the stockholders of said corporation (that is, the complainant), of the second part. The agreement recites that, whereas G. W. Swepson, late president of the Western Division of the Western North Carolina Railroad Company, had made certain investments of the funds of said company in securities of and interests in the said Florida Central Railroad, Jacksonville, Pensacola & Mobile Railroad, and the Tallahassee Railroad of the state of Florida, as per report made by said Swepson to said commissioners, amounting in the aggregate to $1,287,436.03, to bear interest from the first of November, 1869, at eight per cent. per annum; and, whereas, Swepson had theretofore conveyed to Littlefield, subject to the payment of the above claim, his interest in the above railroads; and, whereas, Littlefield had received authority from the legislature of Florida and said several railroad companies, to receive bonds to be issued by and for account of the several railroad companies, which bonds were to be exchanged for the bonds of the state of Florida, to be issued for the purpose of aiding the finances of the said several railroad companies, all of which bonds were then in a state of preparation; and, whereas, Littlefield had made a contract with S. W. Hopkins & Co., for the disposition of said bonds, as the same might be issued, the proceeds of the issue of the bonds of the Central Railroad Company of Florida, amounting to $960,000, were to be applied to the payment of existing liabilities of the several railroad companies, including $150,000 to be paid to the commissioners aforesaid for the purpose of paying existing liabilities of the Western Division of the Western North Carolina Railroad Company; it is therefore agreed by the parties that the proceeds of the sale of said bonds to be issued by the Florida railroad companies and the state of Florida, are to be equally divided between the Western Division aforesaid and the Florida railroads, until the entire amount of $1,287,436.03, with interest as aforesaid, is fully paid. It is further agreed, that all the interest owned or claimed by Swepson and Littlefield, or which, as individuals, they had a right to control in the Florida railroads, is pledged for the faithful fulfillment of this contract, without the right on the part of any party to interfere with their management or control of the affairs of the roads. This agreement was signed by Swepson and Littlefield, and by the North Carolina commissioners, who assumed to act for the complainant, and had been appointed by the legislature, and, as they declare, by the complainant, so to act. As the state of North Carolina was the largest stockholder of the complainant, and as it is conceded that the affairs of the complainant—the Western Division—were for a long time administered by these commissioners, I must assume on this hearing that they had proper authority to represent the complainant in this transaction. At all events, the complainant company had full notice of it, and must be regarded as bound, so far as innocent third parties are concerned.

This agreement is important, not only as showing that the complainant acquiesced in the management of the affairs of the Florida railroads by Littlefield and Swepson as the apparent stockholders and officers thereof, but that it acquiesced in the issue of the very bonds which are involved in this case, and in their exchange for the Florida state bonds, and in the disposal and sale of the latter. And, although subsequent agreements may have been made between the parties (as there were more than once), yet the whole subsequent conduct of the complainant with regard to the Florida railroad property was in affirmation of the authority of Swepson and Littlefield to represent the stock and affairs of the Florida companies. At all events, nothing seems to have been done by the complainant during the long period that followed to put the public

on its guard against dealing with those persons as the proper and lawful stockholders and officers of these companies.

Upon the whole case, therefore, as it stands before me on affidavits, I come to the conclusion that the complainant can claim no rights except such as the Florida Central Railroad Company itself can claim in view of the acts of its known and apparent stockholders and officers. After permitting the affairs of the company to be managed by those stockholders and officers for so many years, it cannot claim to have the company exempted from any obligations which it has assumed, or. to which it may be equitably liable. It cannot claim to stand in a better position than the corporation itself, and especially is this true in reference to bona fide purchasers of the Florida state bonds, issued in exchange for the bonds of the corporation. But my conclusion is, that it is entitled, as the case now stands, to represent the interests of the corporation, and to ask that its just rights may be protected.

Then, lastly, the question . arises, whether the parties at whose instance and in whose behalf the governor of the state of Florida proposes to sell the Florida Central Railroad are bona fide purchasers of the Florida state bonds, issued in exchange for the bonds of the corporation? On this question I must confess that I am not entirely free from doubt. The papers presented to the governor were undoubtedly sufficient to authorize him to take the initiatory steps which he has done in advertising the property for sale. He considered them sufficient, and the law makes him the judge, at least in the first instance, of their sufficiency. Parties adversely interested, of course, have the right to a judicial investigation and determination of the question. The governor's power in the matter is analogous, though in some respects superior, to that of a mortgagee with a power of sale. Such a mortgagee is not obliged to resort to the courts, but may sell on default of payment by giving notice according to the terms of the mortgage. But any person interested adversely to such a sale, may apply to the courts and have his rights adjudicated therein. Whilst, therefore, the governor had the right, in the first instance, to decide on the sufficiency of the proofs laid before him, the complainant, as representing the interests of the Florida Central Railroad Company, had the concurrent right of appealing to the courts for an adjudication upon the claims of those in whose behalf the governor assumed to act. And it seems to me that all that is requisite on the part of the railroad company is to show a probable ground of defense against those claims in order to invest the court with a jurisdiction of the controversy. It would deprive parties of the benefit of a judicial determination of their rights, and would impose upon the governor a responsibility which, I doubt not, he would be very unwilling to assume, if the court, on the presentation of such a case, should decline to assume jurisdiction of the controversy.

Whilst it must be assumed, therefore, and whilst, on examination, there appears no doubt that the proofs laid before the governor were prima facie sufficient to justify the proceedings undertaken by him, the facts which have now been disclosed by the complainant are calculated to raise grave doubts whether the parties claiming to be purchasers of the state bonds in question are really and bona fide such. At all events, a sufficient probable ground of defense has been raised to entitle the complainant to a judicial examination and to render it inexpedient that the property should be sold until such an examination can be had.

Entertaining these views as to the relative rights of the parties, and being convinced by the showing which has been made that there is at least ground for questioning the rights of the bondholders, it is unnecessary that I should examine the affidavits and papers in detail, as that will be more proper on the final hearing of the cause.

Without expressing any opinion on the question whether the bondholders are entitled, in any event, to set up an equity to have the bonds of the corporation enforced for their benefit—a question which has been somewhat discussed, if not decided, by the supreme court of Florida—I am of opinion that a temporary injunction ought to isssue in this case to prevent the governor from selling the road or other property of the company, and from taking possession of the same, until the further order of the court. The parties. however, will have leave at any time to move for a dissolution of this injunction, on filing answers and showing positively the fact that they are bona fide purchasers of state bonds, unless, on further consideration, the court should be of opinion that it would prejudice the rights of the parties to make a sale before final decree.

[For subsequent proceedings in this cause, see Case No. 17,434.]